JEROME NOBLE *vs.* WALTER SIWICKI, *Administrator of the Department of Probation.*

FEBRUARY 11, 1964.

PRESENT: Condon, C. J., Roberts, Powers and Joslin, JJ.

ROBERTS, J. This petition for a writ of habeas corpus was brought by the petitioner to obtain his discharge from the allegedly unlawful custody of the respondent administrator of the department of probation. The petitioner has been in the custody of the respondent pursuant to an order of a justice of the family court issued on February 7, 1963 placing him on probation for a period of one year after having been adjudged in contempt of that court.

It appears from the record that petitioner here testified in a divorce proceeding entitled Jacqueline Vieira v. Joseph Vieira, Divorce No. 75824. In that proceeding the respondent husband's cross petition for a bed and board divorce was granted, but custody of the minor children of the couple was given to the mother. Sometime thereafter the respondent husband petitioned the court for a change in the custody of the children and summoned petitioner here as a witness. At a hearing on the motion petitioner testified, and when this hearing concluded on November 7, 1962 the court ordered him to appear at a later date to show cause why he should not be prosecuted for perjury. The show cause order was heard on February 7, 1963.

At that hearing the trial justice discussed at some length prior testimony of petitioner concerning both his relationship with Mrs. Vieira and his registering as a guest at a cabin in New Hampshire, and also his failure to comply

with the order that he terminate his relationship with Mrs. Vieira. In substance, the court charged petitioner with having testified during the hearing that he had never signed the guest register at the cabin in New Hampshire and that he had denied being at the cabin in the company of Mrs. Vieira and causing a change to be made in the register book. The judge then went on to say: "Subsequently, there were depositions filed in the case. Depositions were to the effect that the change was made although the owner could not state specifically that the change was made by Mrs. Vieira or yourself, the owner did say that you and Mrs. Vieira came back to the cabins where on the date you specifically denied that you were there."

The trial justice stated that while he had given custody of the children to Mrs. Vieira, he had not been satisfied concerning her activities and recalled that at that time he had issued a warning that if she engaged in such activities any further, he would take the children away from her. He also referred to his directing petitioner to keep away from Mrs. Vieira and said: "If you come in here again and I hear of you being in her company, I will see to it that you are sent down to jail and you will stay there. Now you have had all the chances that you're going to have, and this is the last one. I am not going to cite you for perjury, but I am going to cite you for contempt of this Court. The record may show that I find you in contempt, and for the contempt, I am going to place you on probation for a period of one year. The terms of the probation are that you are to stay away from Mrs. Vieira, period. You understand?" It does not appear from the record that petitioner had notice concerning the depositions which were apparently made by an innkeeper in New Hampshire concerning the registration of Mrs. Vieira and petitioner in a cabin operated by him.

There appears to be no dispute that in this state habeas corpus lies to procure the discharge of a person from the

unlawful custody of a probation officer. We are of the opinion that the provisions of our statute, G. L. 1956, §10-9-1, are of sufficient latitude to enable a person restrained by reason of commitment to the custody of a probation officer to prosecute a writ of habeas corpus to terminate that restraint if unlawfully imposed. The pertinent portion thereof provides that every person imprisoned in a correctional institution "or otherwise restrained of his liberty by any officer or other person" may prosecute a writ of habeas corpus to obtain relief from such restraint if unlawfully imposed. The view which we take of this statute appears to be consistent with the basic concept set out in *Jones* v. *Cunningham*, 371 U. S. 236. In passing upon the question of whether habeas corpus properly could be invoked to terminate the custody of a petitioner by a parole board, the court said at page 240: "History, usage, and precedent can leave no doubt that, besides physical imprisonment, there are other restraints on a man's liberty, restraints not shared by the public generally, which have been thought sufficient in the English-speaking world to support the issuance of habeas corpus." In our opinion the restraints arising out of probation are such.

While the record before us is persuasive that the judge found petitioner in contempt for a violation of his order to terminate his relationship with Mrs. Vieira, respondent appears to attempt to justify the restraint on the basis that the adjudication of contempt was made on the conclusion of the trial justice that petitioner had testified falsely before him. As we understand respondent, he is contending that when a witness testifies falsely before a court it is a direct contempt, which the court may punish summarily.

It is clear that petitioner here was deprived of due process of law in being adjudicated in contempt. It is therefore our opinion that to sustain the summary action to punish the alleged contempt, it must be shown that the contempt

in its nature was direct in its adverse effect upon the authority and prestige of the court. In such circumstances the court may punish summarily conduct directly contemptuous of its authority. This court said in *Rhode Island Bar Ass'n* v. *Automobile Service Ass'n,* 55 R. I. 122, 129, referring to the power to punish for contempt: "This inherent power of the judiciary to punish for contempt is a necessary but also a dangerous power, and is therefore to be used with great caution." The caution contemplated by this court is such as would preclude the extension of the summary punishment of contempt to any cases other than those in which the authority of the court is clearly adversely affected.

The view to which we thus adhere is entirely consistent with that set forth in *In re Oliver,* 333 U. S. 257. In that opinion the court said at page 274: "It is true that courts have long exercised a power summarily to punish certain conduct committed in open court without notice, testimony or hearing. * * * This Court reached its conclusion because it believed that a court's business could not be conducted unless it could suppress disturbances within the courtroom by immediate punishment. However, this Court recognized that such departure from the accepted standards of due process was capable of grave abuses, and for that reason gave no encouragement to its expansion beyond the suppression and punishment of the court-disrupting misconduct which alone justified its exercise." This is the concept that the exercise of the power to summarily punish without regard to due process of law should be confined to cases where the contemptuous conduct clearly affects adversely the authority and prestige of the court.

In other words, due process is required in the punishment of contempts except for a narrowly limited category thereof. "The narrow exception to these due process requirements includes only charges of misconduct, in open

court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, or actually observed by the court, and where immediate punishment is essential to prevent 'demoralization of the court's authority' before the public." *In re Oliver, supra,* at page 275. To give effect to this policy, the courts of this state must weigh carefully the nature of the alleged contemptuous act or conduct and the circumstances and conditions of its commission in passing upon the question of whether it should be the subject of summary punishment without regard to due process of law. In doing so, it is our opinion that the court should consider whether the nature of the conduct and the conditions under which it was committed are such as clearly to establish that, absent summary action on the part of the court in punishment thereof, its prestige and authority will be impaired or that the public interest in the prompt administration of justice will be thwarted.

The alleged contemptuous conduct of petitioner here, when so evaluated, discloses no such threat to the authority or prestige of the court as would justify abandonment of the requirements for due process and a resort to summary action on the part of the court to punish such conduct. It is not conduct, in our opinion, that has such an adverse effect upon the administration of justice as to require that the court punish it summarily. This is not to say that perjury, when committed in open court in the presence of a judge and of the parties to the action, could never be a direct contempt that would require summary punishment. But the testimony given in the instant case that the trial justice believes was false was not, in our opinion, of such a nature or given in such circumstances as to be sufficiently grave to warrant the court's disregard of the requirements of due process in imposing the punishment.

The petition for habeas corpus is granted, and the respondent is directed to discharge the petitioner forthwith

from the custody in which he is held pursuant to being placed on probation on February 7, 1963.

*Abedon, Michaelson & Stanzler, Milton Stanzler, Richard A. Skolnik,* for petitioner.

*J. Joseph Nugent,* Attorney General, *Carmine A. Rao,* Assistant Attorney General, for respondent.

*William J. Sheehan, Norman J. Bolotow,* as amicus curiae.