The **UNITED STATES**

v.

Philip **BERRIGAN,** David Eberhardt, Thomas Lewis, and James Mengel.

Cr. A. No. 27817.

United States District Court
D. Maryland.
April 19, 1968.

* See Note * on Page 335.

1. injure property of the United States;

2. mutilate records filed in a public office of the United States; and

3. hinder the administration of the Military Selective Service Act.

Defendants wish to proffer an opening statement to the jury as to what they would present for their defense. Specifically, they contend that, by virtue of what they have read, heard, and seen, the war in Vietnam is immoral and illegal; and that the United States, in carrying on the war in Vietnam, is violating certain precepts of international law, constitutional law, and judgments which were handed down at Nurnberg.

To serve as a foundation and a basis for their beliefs, defendants wish to produce in court, among other evidence, "the outstanding experts" on international law who would testify that the acts of the United States government in Vietnam are illegal. Their conduct, they say, was prompted by their belief that the United States is acting illegally and was intended to prevent criminal acts from being committed. Because this belief prompted their acts, they argue that the necessary *mens rea* is lacking.

■ Initially, it must be pointed out that in law once the commission of a crime is established—the doing of a prohibited act with the necessary intent— proof of a good motive will not save the accused from conviction. In a long line of cases, the courts have consistently reiterated that

"[O]ne is criminally responsible who does an act which is prohibited by a valid criminal statute, though the one who does this act may do it under a deep and sincere religious belief that the doing of the act was not only his right but also his duty." Baxley v. United States, 134 F.2d 937, 938 (4th Cir. 1943).

This point is best illustrated and highlighted by those cases where a defendant has been found guilty of murder even

Stephen H. Sachs, U. S. Atty., and Donald Sharpe, Asst. U. S. Atty., Baltimore, Md., for the United States.

Fred E. Weisgal, Baltimore, Md., for defendants.

NORTHROP, District Judge.

The defendants before this court are charged in three counts that they did willfully

though the motive advanced for justification was of the highest and most selfless level. For example, a man drowns his children because he loves them and wants to prevent their suffering in poverty; and a man poisons his wife, at her request, to end her agony from an incurable disease. See Perkins, Criminal Law, Ch. 7 (1957), p. 721, and cases cited therein.

Counsel for defendants candidly admits that there is no precedent for the proposition advanced here, namely that any citizen is justified in mutilating and damaging government property and interfering with vital governmental functions—all acts specifically prohibited by penal statutes—if he reasonably believes that the government is acting illegally under international and possibly constitutional law.

The defense, as proffered, is analogous to the common-law right or privilege of one to use force to prevent the commission or consummation of a felony or of a misdemeanor amounting to a breach of the peace. But the defense of justification is not as broad as stated by counsel. Historically, it has been limited to well-recognized situations, Townsend v. United States, 68 App.D.C. 223, 95 F. 2d 352, 358 (1938), and well-defined areas of the law. More recently, it has been further limited by courts which have realized that in certain respects the doctrine of justification is outdated in our modern society because of the potential danger to society itself and because of the availability of other more civilized remedies. State v. Koonce, 89 N.J.Super. 169, 214 A.2d 428, 436 (1965).

That there is no legal precedent for defendants' proposition is not surprising. No civilized nation can endure where a citizen can select what law he would obey because of his moral or religious belief. It matters not how worthy his motives may be. It is axiomatic that chaos would exist if an individual were permitted to impose his beliefs upon others and invoke justification in a court to excuse his transgression of a duly-enacted law. The

opinion of the court in Nation v. District of Columbia, 34 App.D.C. 453, 455, 26 L.R.A., N.S., 996 (1910), is particularly apt. In the lower court the defendant had been charged with willfully breaking and destroying certain bottles containing intoxicating liquors in violation of an Act of Congress.

The appellant argued, inter alia, that the use of the property, viz. the intoxicating liquors, constituted a public nuisance which any citizen had a right to abate. The court, in denying this proffered defense of justification, said:

"Assuming for the sake of argument, that the keeping for sale without license constitutes a public nuisance as well as an offense, the fact affords neither justification nor excuse for their destruction by the defendant. The sale of intoxicating liquors without license is prohibited by law, and may be prevented and punished but this can only be done through the agencies and in the manner provided by law. The abatement of public nuisances and the enforcement of the penal laws are matters of public duty and administration; and the interference of private persons, save in the making of complaints before the proper public officers and tribunals, is itself a nuisance, which, if accompanied by acts of violence, renders the wrongdoer liable both to civil action and criminal prosecution. *Mob law can have no recognition in our system and should be sternly repressed in its beginning.*" [Emphasis supplied.]

■ The reasonableness of the belief of these defendants that the government is acting illegally in Vietnam is irrelevant to the present case; for, even if it were demonstrable that the United States is committing violations of international law, this violation by itself would afford the defendants no justifiable basis for their acts.

■ More specifically, no matter how reasonably, sincerely, or deeply these defendants believed that the government

was acting illegally does not go to the question whether they sincerely and honestly believed that *their* acts were lawful and thus negate the specific intent necessary for conviction, namely willfulness. Thus, the proposition presented here is to be distinguished from a case where a defendant believed that he was acting within the law, although subsequently it turns out that he was mistaken as to the applicable law. United States v. Murdock, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381 (1933).

In essence, the defendants are arguing not that they were legally justified in acting the way they chose to, or that they had a *bona fide* belief that they were legally justified, but that their lofty motives and sincerely-held convictions negate criminal intent.

Counsel also contends that the defendants' acts are symbolic expressions of speech which are protected by the First Amendment of the United States Constitution and thus he is entitled to offer this defense before the jury. In Dennis v. United States, 341 U.S. 497, 513, 71 S.Ct. 857, 95 L.Ed. 1137 (1951), the Court said:

> "Whether the First Amendment protects the activity which constitutes the violation of the statute must depend upon a *judicial determination* of the scope of the First Amendment applied to the circumstances of the case." [Emphasis supplied.]

The First Amendment guarantees:

> "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

It embraces two concepts: freedom of belief, opinion and communication; and freedom to act.

> "The first is absolute but, in the nature of things, the second cannot be.

Conduct remains subject to regulation for the protection of society." Cantwell v. State of Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940).

Now, in this particular instance, it cannot be seriously argued that the violation of the statutes charged to these defendants are premised upon speech or any type of expression in its pristine form. On the contrary, what is sought to be prohibited by these criminal statutes and what the defendants are charged with is activity or conduct which results in the disruption of a valid and vital governmental function and the depredation and destruction of government property and files.

■ It is true that some types of conduct are classified as symbolic speech and have been afforded the protection of freedom of speech because symbolism in the form of a flag, a salute, or picketing, et cetera, has been recognized as "a primitive but effective way of communicating ideas." West Virginia State Board of Education v. Barnette, 319 U.S. 624, 632, 63 S.Ct. 1178, 1182, 87 L.Ed. 1628 (1943). But, in Cox v. State of Louisiana, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965), it was held that not all kinds of communicative acts are examples of symbolic speech and not all acts are afforded the protection of the First Amendment.

■ There can be no doubt that the First Amendment protects speech in opposition to national policy in Vietnam and to the Selective Service System. Bond v. Floyd, 385 U.S. 116, 87 S.Ct. 339, 17 L.Ed.2d 235 (1966). But this protection does not shield conduct which collides with a valid criminal statute. And it makes no difference, as this court has pointed out before, that the defendants acted out of the sincerest of motives and the deepest of convictions, be they religious, moral, or political. Only recently the Supreme Court in *Cox* emphasized it could not sanction

> "riotous conduct in any form or demonstrations, however peaceful their

conduct or commendable their motives, which conflict with properly drawn statutes and ordinances designed to promote law and order, protect the community against disorder, regulate traffic, safeguard legitimate interests in private and public property, or protect the administration of justice and other essential governmental functions." at 574, 85 S.Ct. at 485.

It was said by Mr. Justice Cardozo in connection with religious convictions:

"The conscientious objector, if his liberties were to be thus extended, might refuse to contribute taxes in furtherance of a war, whether for attack or for defense, or in furtherance of any other end condemned by his conscience as irreligious or immoral. The right of private judgment has never yet been so exalted above the powers and the compulsion of the agencies of government. One who is a martyr to a principle—which may turn out in the end to be a delusion or an error—does not prove by his martyrdom that he has kept within the law." Hamilton v. Regents of the University of California, 293 U.S. 245, 268, 55 S.Ct. 197, 206, 79 L.Ed. 343 (1934).

■ This court finds that under the circumstances of this case the conduct which is charged in the indictment is not afforded the protections of the First Amendment and a conviction under these criminal statutes would not deny to these defendants any of the guarantees of that Amendment.

■ Finally, counsel contends that these defendants should be allowed to present to the jury what is popularly known as the "Nurnberg Defense." The trial of the Nazi war criminals at Nurnberg was premised on the generally accepted view that there are, as a part of international law, certain crimes against peace and humanity which are punishable. The Nurnberg Trial, 6 F.R.D. 69 (1946). It is urged here that the belief of these defendants that the United States was waging a war of aggression, and thus committing a crime against peace, justified the acts charged.

It is not clear what standing these defendants have to raise the legality of this country's involvement in Vietnam when they have not been called to serve in the armed forces, are not directly affected by our government's actions in that country, and are not even directly affected by the Selective Service apparatus. As pointed out by Judge Charles E. Wyzanski in an article in the February 1968 issue of the Atlantic Monthly:

"As the Nuremberg verdicts show, merely to fight in an aggressive war is no crime. What is a crime is *personally* to fight by foul means." [Emphasis supplied.]

■ The important element in this defense, assuming its applicability in an American court, is the individual responsibility which is necessary before it can be raised. These defendants do not have standing to raise the validity of governmental actions, either under international law or constitutional law, on the grounds that the rights of parties not before this court are violated. Courts "must deal with the case in hand, and not with imaginary ones." Yazoo & M. V. R. Co. v. Jackson Vinegar Co., 226 U.S. 217, 218, 33 S.Ct. 40, 41, 57 L.Ed. 193 (1912).

I refer again to the opinions expressed by Judge Wyzanski because they are timely articulations of ancient principles found in scores of cases. In our disturbed times, modern expressions seem to have more persuasion than the authority of antiquity.

"For men of conscience there remains a less risky but not a less worthy moral choice. Each of us may bide his time until he personally is faced with an order requiring him as an individual to do a wrongful act. Such patience, fortitude, and resolution find illustration in the career of Sir Thomas More. He did not rush

in to protest the Act of Henry VIII's Parliament requiring Englishmen to take an oath of supremacy attesting to the King's instead of the Pope's headship of the English Church. Only when attempt was made to force him to subscribe to the oath did he resist.

\* \* \*

"This waiting until an issue is squarely presented to an individual and cannot further be avoided will not be a course appealing to those who have a burning desire to intervene affirmatively to save his nation's honor and the lives of its citizens and citizens of other lands. It seems at first blush a not very heroic attitude. But heroism sometimes lies in withholding action until it is compelled, and using the interval to discern competing interests, to ascertain their values, and to seek to strike a balance that marshals the claims not only of the accountant and of others in his society, but of men of distant lands and times."

■ But irrespective of the lack of standing of these defendants to raise the issue of the legality of the government's actions as they relate to the Vietnam situation, the proffered defense suffers from a more fundamental bar. It is clear that there are certain questions of substantive law, that is, "political questions", which are not cognizable in our courts because of the nature of our governmental system which is based upon a separation of functions among different branches of the government. The doctrine

"is one of 'political questions,' not one of 'political cases.' The courts cannot reject as 'no law suit' a bona fide controversy as to whether some action denominated 'political' exceeds constitutional authority." Baker v. Carr, 369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663 (1962).

Certain clearly defined areas have traditionally and necessarily been left to other departments of the government, free from interference by the judiciary.

One such area in foreign relations. Baker v. Carr, supra, at 211, 82 S.Ct. at 691.

It is true that not every case which touches the foreign-relations power of the country is necessarily a "political question." Courts have usually decided the constitutional questions concerning international agreements, Reid v. Covert, 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957), but the corresponding question of international law has been treated as a "political question."

■ The activities of these defendants were directed towards the Selective Service System, which system counsel has admitted is not criminal or illegal in and of itself. What is called into question here is the utilization of the armed forces by the executive and legislative branches. It cannot be disputed that the recognition of belligerency abroad, and the measures necessary to meet a crisis to preserve the peace and safety of this country, is uniquely an executive and a legislative responsibility. Whether the actions by the executive and the legislative branches in utilizing our armed forces are in accord with international law is a question which necessarily must be left to the elected representatives of the people and not to the judiciary. This is so even if the government's actions are contrary to valid treaties to which the government is a signatory. And the Supreme Court has held that Congress may constitutionally override treaties by later enactment of an inconsistent statute, even though the subsequent statute is in violation of international law.

The categorization of this defense as a "political question" is not an abdication of responsibility by the judiciary. Rather, it is a recognition that the responsibility is assumed by that level of government which under the Constitution and international law is authorized to commit the nation.

■ The "Nurnberg Defense" is premised on a finding that the govern-

ment is acting in violation of international law in waging an agressive war, and, as such, cannot be raised here because the question of violations of international law by the government is uniquely a "political" question.

Counsel will govern themselves accordingly, and the court's instructions to the jury will reflect this decision if any transgression makes it necessary.