266 A.2d 33.

STATE *vs.* MARY COSTANTINO.

JUNE 11, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

ROBERTS, C. J.  This is a petition for habeas corpus brought by Mary Costantino, hereinafter referred to as petitioner, for discharge from the custody of the respondent warden after being committed thereto for a term of 60 days upon being adjudged guilty of criminal contempt by a justice of the Superior Court on March 17, 1970. At that time the petitioner claimed an appeal from the judgment and subsequently filed the instant petition for habeas corpus.  After consideration of the petition, we concluded that the petition for habeas corpus would be treated as a petition for admission to bail and as an appeal from the conviction for criminal contempt.  It was thereupon assigned specially for hearing to May 6, 1970.

The record discloses that on March 17, 1970, during the

trial of several defendants, some charged with murder and others with conspiring to murder, Lucille F. Hasney, the daughter of one of the alleged victims, had been testifying in behalf of the prosecution. At the conclusion of her testimony, she left the witness stand and was being escorted through the spectators' benches at the rear of the courtroom by two state police detectives. She subsequently testified that, as she was passing through the group of spectators, one Mary Costantino, a sister of one of the defendants, Rudolph G. Sciarra, said to her: "You are going to get killed." Her testimony to this effect was corroborated by the testimony of the two state police detectives who were escorting her.

It appears further that the trial justice was on the bench while Mrs. Hasney was being escorted from the courtroom. The prosecution informed the trial justice of the actions of petitioner, and at the direction of the court questioned Mrs. Hasney and the two state police detectives. All of them testified as to the remark made by petitioner. The trial justice then adjudged petitioner "guilty of criminal contempt" and sentenced her to 60 days in the Adult Correctional Institutions.

The only issue raised in this court is whether the trial justice erred in imposing sentence upon petitioner after finding her guilty of criminal contempt in a summary proceeding. It is apparently conceded that penalties were imposed upon petitioner in such a summary proceeding without due process of law. In this state it is settled that to sustain the validity of a summary action to punish for contempt, it must be shown that the contempt in its very nature was direct in its adverse effect upon the authority and prestige of the court. Only in such a case may the court summarily punish conduct directly contemptuous of its authority. In *Noble* v. *Siwicki*, 97 R. I. 288, 291-92, 197 A.2d 298, 301, we stated the rule as follows: "It is

therefore our opinion that to sustain the summary action to punish the alleged contempt, it must be shown that the contempt in its nature was direct in its adverse effect upon the authority and prestige of the court. In such circumstances the court may punish summarily conduct directly contemptuous of its authority."

In *Noble* we noted that the rule to which we adhered is entirely consistent with that set forth in *In re Oliver*, 333 U. S. 257, 68 S.Ct. 499, 92 L.Ed. 682. There the United States Supreme Court made it clear that, except in a narrowly limited category of contempts, due process of law requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have an opportunity to testify and to produce other witnesses in his own behalf either for purposes of defense or explanation.

The Court in *Oliver* went on to state at 275-76, 68 S.Ct. at 509, 92 L.Ed. at 695: "The narrow exception to these due process requirements includes only charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent 'demoralization of the court's authority' before the public." The Court further stated: "If some essential elements of the offense are not personally observed by the judge, so that he must depend upon statements made by others for his knowledge about these essential elements, due process requires, according to the *Cooke* case, that the accused be accorded notice and a fair hearing as above set out."

The controlling issue, then, is whether the conduct of petitioner constituted a direct contempt. We think not.

In the first place, this court, following the lead of the United States Supreme Court, emphasizes that direct contempts punishable in a summary proceeding constitute a very limited category of contempts. The class should not be enlarged unless all of the elements stated in *Oliver* as constituting such a direct contempt have been established.

The state argues at some length that even though the record discloses that the trial justice in this case was unaware of the conduct of petitioner until his attention was directed to it by the prosecution and its nature was disclosed by the testimony of the witness and the state police detectives, it happened under the eye of the court and, therefore, constitutes a direct contempt whether the court personally observed it or not. With this we do not agree.

In *In re Oliver, supra* at 274-75, 68 S.Ct. at 508, 92 L.Ed. at 695, the Court refers to *Cooke* v. *United States*, 267 U. S. 517, 45 S.Ct. 390, 69 L.Ed. 767, and says: "There it was pointed out that for a court to exercise the extraordinary but narrowly limited power to punish for contempt without adequate notice and opportunity to be heard, the court-disturbing misconduct must not only occur in the court's immediate presence, but that the judge must have personal knowledge of it acquired by his own observation of the contemptuous conduct." The Court noted that in *Cooke* it was held that knowledge acquired from the testimony of others, even from an admission on the part of the accused, will not justify conviction for a contempt without due process, therefore, clearly holding that the court's business must be disturbed to such an extent that the trial justice becomes personally aware of the contemptuous misconduct by reason of his own senses.

It is our opinion also that an important consideration as to whether a contempt is direct is the nature of the conduct engaged in. It seems rather obvious that the rule permitting summary punishment in such cases contem-

plates conduct that effects a serious and substantial challenge to the authority of the court and cannot be allowed to go unpunished without risking a substantial erosion of our whole adjudicatory system. If petitioner's statement in the instant case had been accompanied by a violent physical outburst or by loud and belligerent language shattering the decorum of the courtroom, there would be little question as to its character as a direct contempt. To the contrary, however, her statement was made in an atmosphere of secrecy and was apparently heard only by the participants therein and Mrs. Hasney's police escorts.

We recognize that the circumstances in which petitioner made the alleged statement make this case a close one on the question of whether her conduct constituted a direct contempt and was, therefore, punishable without due process of law. We fully appreciate the concern of the trial justice for the preservation of the dignity and authority of the court as we appreciate likewise the seriousness of the alleged conduct of petitioner. The trial justice was warranted in acting promptly to secure the authority of his court and, of course, to protect the witness testifying therein from threats and intimidation. However, there is nothing in the record, as we have already noted, that warrants classifying petitioner's conduct as a direct contempt.

There is little question that if, after a hearing in which the petitioner's right to due process was honored, it was established that that conduct was intended to intimidate the witness, it would be punishable as a criminal contempt. However, a jealous regard for the right of the citizen charged with contemptuous conduct to enjoy his constitutionally secured right to due process of law in a determination of his guilt persuades us to avoid enlarging the concept of a direct contempt by including therein the facts which are present in the instant case. It is our conclusion, then, that the trial justice erred in finding the petitioner

here guilty of contemptuous conduct derogatory to the authority and dignity of the court without having afforded her a hearing on that issue with her constitutional right to due process of law secured therein.

The appeal of the petitioner is sustained, and the judgment is reversed.

*Herbert F. DeSimone,* Attorney General, *Donald P. Ryan,* Assistant Attorney General, for plaintiff-respondent.

*Thomas R. DiLuglio, John E. Migliaccio,* for defendant-petitioner.