STATE

v.

**Kate CHAMPA, Sue Ann Shay and Judith Beaumont.**

**No. 84–304–C.A.**

Supreme Court of Rhode Island.
June 19, 1985.
Reargument Denied July 11, 1985.

---

3. Section 28–35–9 provides:
   "In the event that an employer or insurer makes payment of compensation to an employee without executing a memorandum of agreement such payment shall constitute an admission that the employee is entitled to compensation under the provisions of chapters 29 to 38, inclusive, of this title * * *."

Arlene Violet, Atty. Gen., Timothy Conlon, Sp. Asst. Atty. Gen., for plaintiff.

Mortimer C. Newton, Providence, and Sue Ann Shay and Judith Beaumont, pro se, for defendants.

OPINION

SHEA, Justice.

In January 1984 the defendants, along with three others, were tried before a jury in the Superior Court on charges of malicious injury to property in violation of G.L. 1956 (1981 Reenactment) § 11–44–1 and trespass in violation of a North Kingstown town ordinance. The jury found all the defendants guilty as charged. Sentences were imposed of six months' imprisonment with five months suspended and five months' probation on the malicious-injury charge, along with fines on the trespass charge. The defendants, Kate Champa, Sue Ann Shay, and Judith Beaumont, appeal their convictions. We affirm.

The issues on appeal are essentially these: (1) whether the trial justice committed error in refusing to allow defendants both to testify about their intents, motives, and states of mind and to raise every reasonable defense including international law and justification, (2) whether the trial justice committed error in refusing to instruct the jury of its right to reach a verdict contrary to the law and the evidence, and (3) whether the trial justice erred in citing defendant Beaumont for criminal contempt.

The event that led to defendants' convictions occurred in the early morning hours of October 3, 1983. At approximately 6 a.m., defendants entered upon the premises of the Electric Boat Division of General Dynamics Corporation, Quonset Point, Rhode Island. Access was gained past a chain that had been cut and through a gate.[1] The grounds were fenced and marked with no-trespassing signs. While on the premises, defendants spray-painted a number of D–5 Trident II missile tubes with the words "thou shalt not kill." They also attached posters to the tubes, charging "indictments" against General Dynamics and the United States government for their participation in the manufacture of nuclear missiles. These acts were done,

according to defendants, to dramatize their opposition to nuclear war. After being discovered on the grounds by Electric Boat security personnel, they were arrested by the North Kingstown police. The defendants were subsequently charged, tried, and convicted.

The defendants have not denied their participation in the prohibited acts but have insisted from the outset that their conduct was justified as essential to the protection of human life and was motivated by a sincere belief that their acts were necessary to prevent the escalation of the nuclear-arms race. To that end, the offer of proof by defendants described the witnesses and the evidence sought to be offered. Specifically, defendants sought to introduce the testimony of two experts who were prepared to testify to facts concerning Trident II missiles and the reasonableness of defendants' beliefs and actions. The trial justice excluded that testimony as immaterial, stating that "[m]issle tubes are not on trial in this case * * *." Exclusion of this evidence, defendants argue, contravened constitutional principles. We cannot agree.

**I**

■ Necessity, or justification, as a defense is not available if a legal alternative exists. *United States v. Bailey*, 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980). Thus, to be excused from liability, a defendant must show "(a) that there is no third and legal alternative available, (b) that the harm to be prevented [is] imminent, and (c) that a direct, causal relationship [is] reasonably anticipated to exist between defendant's action and the avoidance of harm." *United States v. Seward*, 687 F.2d 1270, 1275 (10th Cir.1982) (quoting *State v. Marley*, 54 Haw. 450, 509 P.2d 1095 (1973)). Moreover, under the prevailing view,

---

**1.** It was not established at trial which of defendants cut the chain or whether the gate was locked or open.

"[t]he defense of necessity does not arise from a 'choice' of several courses of action, it is instead based on a real emergency. It can be asserted only by a defendant who was confronted with such a crisis as a personal danger, a crisis which did not permit a selection from among several solutions, some of which did not involve criminal acts. It is obviously not a defense to charges arising from a typical protest." *United States v. Seward*, 687 F.2d at 1276.

█ In the present case, all of the required elements for successful use of the necessity defense are lacking. Certainly, first of all, other legal means of protest were available to defendants to demonstrate their beliefs. Instead, they chose to embark on a course of criminal conduct with full knowledge of the consequences. Second, their claim that their conduct was reasonably calculated to avoid imminent harm would require a finding that given the imminence of the threat, violation of the law was their only reasonable alternative. There is no basis for such a finding. Last, as far as causal connection is concerned, defendants would have to demonstrate that the act of spray-painting could reasonably be calculated to bring about an actual halt of all future production of missile components. It is patently impossible to establish that proposition.

The defendants, in a related contention, also argue that the trial justice improperly precluded consideration of a lack of criminal intent and that he erroneously refused to consider a defense arising from international law.

█ The first question requires an analysis of the state of mind, or "mens rea," required for conviction under § 11–44–1 and the distinction between "general intent" and "specific intent" crimes. The question of whether an act is criminal without regard to intent can be determined from the language of the statute. Some offenses by their very definition require a specific intent. Where this is the case, the specific intent required is as much an element of the offense as the act itself. *State v. Bitting*, 162 Conn. 1, 291 A.2d 240 (1971). Section 11–44–1 prohibits the willful, malicious, or mischievous injury to property, including painting or other defacement. This offense under Rhode Island law is classified as a misdemeanor. As such, proof of specific intent is not essential, even though the statute requires that it be willfully committed. *United States v. Gunn*, 97 F.Supp. 476 (W.D.Ark. 1950); 22 C.J.S. *Criminal Law* § 32 at 118 (1961).

█ In this case, the intent of the accused is not an essential ingredient of the charge. Consequently, mere general malice or criminal intent is sufficient. All the state needed to prove, as the trial justice properly instructed, was that defendants first, did willfully and maliciously or mischievously join together, second, to injure or, in the alternative, destroy, or in the alternative, paint or otherwise deface, the property of another. Since specific intent was not an essential element of the crime, the trial justice properly precluded consideration of criminal intent.

█ We now consider defendants' second contention with regard to a domestic court's responsibility under international law.[2] We have reviewed the cases considering this issue and find the reasoning of the Supreme Court of Hawaii most persuasive. In *State v. Marley*, 54 Haw. 450, 509 P.2d 1095 (1973), the court held that antiwar activists charged with trespass lacked standing to raise, as a defense, principles of treaty law. *See also United States v. Allen*, 760 F.2d 447, 451 (2d Cir. April 24, 1985); *United States v. Berrigan*, 283 F.Supp. 336 (D.Md.1968). The rationale of the court's decision in *Marley* is that the judiciary should not decide " 'political

---

**2.** The defendants argue that it was error for the court to exclude evidence to the effect that an American citizen is in violation of international law if she consents to cooperate with any government or agency that produces, possesses, or is willing to use nuclear weapons.

questions' of the sort presented by reliance on a theory that one's own government violates its own treaty obligations." *State v. Marley*, 54 Haw. at 475, 509 P.2d at 1110. We adopt that reasoning.

■ Our analysis to this point, however phrased, is concerned with the materiality and relevancy of evidence. It is appropriate, therefore, that we reiterate our well-established rule that "questions of relevancy are addressed to the sound discretion of the trial justice," *State v. Barnville*, — R.I. —, —, 445 A.2d 298, 302 (1982), and his determination regarding the relevancy of evidence will not be disturbed on appeal absent a showing of abuse of that discretion. *State v. Ashness*, — R.I. —, —, 461 A.2d 659, 674 (1983). On this issue, defendants have failed to demonstrate any such abuse.

## II

■ The defendants' second major contention is that the trial justice erred in refusing to charge the jury "on its right to reach its own conclusion in spite of the instruction given by the court." The defendants rely principally on the case of *United States v. Dougherty*, 473 F.2d 1113 (D.C.Cir.1972), a case factually similar to the one at bar, wherein the doctrine of jury nullification was discussed extensively and the power of the jury " 'to bring in a verdict in the teeth of both law and facts' " was recognized. *Id.* at 1133. While acknowledging the raw power of a jury to ignore the facts and the law, the court, however, refused any blanket endorsement of a rule requiring a trial justice to inform the jury of this prerogative, cautioning that

"[a]n explicit instruction to a jury conveys an implied approval that runs the risk of degrading the legal structure requisite for true freedom, for an ordered liberty that protects against anarchy as well as tyranny." *Id.* at 1137.

On at least one occasion in this jurisdiction, we have likewise recognized that "[a]n inherent feature of the right to a common law jury trial is the jury's power to find a defendant not guilty despite overwhelming evidence of his guilt." *State v. Ciulla*, 115 R.I. 558, 575, 351 A.2d 580, 589 (1976). While we concede that a jury may render a verdict that violates the law, when this is done, it is a violation of the legal responsibility of the jurors. Certainly, it would be erroneous and improper for a court to lend its approval to such lawless conduct, even if no sanction could be imposed for its exercise. The fact that a person or persons may ignore legal requirements with impunity does not make this failure a right.

## III

■ Unlike the issue of jury nullification, defendants' final assignment of error, namely, criminal contempt, has received extensive review in this jurisdiction. We have consistently held that although the sanction should be cautiously applied, its application is appropriate in circumstances in which the authority and the prestige of the court are affected. *See Peltier v. Peltier*, 120 R.I. 447, 388 A.2d 22 (1978); *Marek v. Marek*, 119 R.I. 841, 383 A.2d 1031 (1978); *Tente v. Tente*, 112 R.I. 636, 314 A.2d 149 (1974); *State v. Costantino*, 107 R.I. 215, 266 A.2d 33 (1970); *Rhode Island Bar Association v. Automobile Service Association*, 55 R.I. 122, 179 A. 139 (1935).

■ During the attempt at establishing a common scheme among defendants to enter upon the premises of Electric Boat, the following colloquy took place among defendant Beaumont, the prosecutor, and the court:

"Q. And where did you all meet on the morning of October 3rd? Did you separate or did you arrive together?

\*    \*    \*    \*    \*    \*

"A. I don't recall.

"Q. How many cars were taken?

\*    \*    \*    \*    \*    \*

"A. I really don't think we have anything to hide, and I think that we went in two cars.

"Q. Two cars? And who drove?

"A. I won't answer. First off, I don't remember, to tell you the truth about one of them, and the other one I don't think it's relevant, and I won't answer the question.

THE COURT: Overruled. You may ask the question again. You answer all questions put to you as to who drove.

"A. I was not one of the drivers, and I will not answer the question.

\* \* \* \* \* \*

THE COURT: You may put the question again if you wish.

\* \* \* \* \* \*

"A. I don't believe it's relevant. I cannot answer the question. It was not one of the defendants, and you can do whatever you want with me, but I will not, I will not answer the question."

Thereupon, the jury was escorted from the courtroom, and defendant Beaumont was cautioned extensively about the penalties for contempt. She persisted in her refusal to answer, whereupon the court adjudged her in contempt and imposed a $100 fine.

In the circumstances of this case, it is clear that the authority of the court was challenged. The defendant Beaumont was fully cognizant of the fact that once she took the stand, her privilege against self-incrimination disappeared. Unmoved by the admonitions of the court, defendant continued to be obstinate. We believe that the imposition of the sanction of criminal contempt, on these facts, was appropriate.

Before dismissing this appeal, we would mention that we have no doubts about the sincerity of the defendants' position, but that position is unfortunately premised on the assumption that people who want to propagandize a view have the right to do so whenever and wherever and however they please. This concept cannot be permitted in an orderly society, and those who insist on doing so must be willing to accept the sanctions that inevitably accompany a violation of law.

For the reasons stated, the defendants' appeals are denied and dismissed, the judgments of conviction appealed from are affirmed, and the papers in the case are remanded to the Superior Court.