CHARLES CUSHMAN CO. ET AL. *vs.* WILLIAM J. MACKESY ET AL.

VENUS SHOE MANUFACTURING CO. *vs.* WILLIAM J. MACKESY ET AL.

Androscoggin.      Opinion, June 30, 1938.

*Skelton & Mahon,*
*Webber & Webber,*

*Berman & Berman* (Lewiston, Maine), for plaintiffs.
*A. Raymond Rogers,*
*Ernest L. Goodspeed,* for defendants.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, JJ.

THAXTER, J.   This case arises out of petitions charging the respondents with contempt of court.

On April 9, 1937 two separate bills in equity were filed in the Supreme Judicial Court in the County of Androscoggin against certain labor organizers, some of whom were officials of the United Shoe Workers of America, an affiliate of the Committee for Industrial Organization. The plaintiffs in these bills were various shoe manufacturers located in the cities of Lewiston and Auburn who sought injunctions both temporary and permanent against the continuation of a strike alleged to have been called by the defendants and against all activities in support of such strike. On April 20th, after an extended hearing on the consolidated bills, a temporary injunction was issued declaring the strike illegal; and the defendants, their agents, servants, attorneys and representatives, were enjoined until further order of court from maintaining, encouraging, aiding and abetting said strike and from inducing, advising, counselling, or aiding the employees of the plaintiffs to continue it. Coercion, intimidation and all forms of picketing were forbidden. On April 22nd, a petition for contempt was filed by the plaintiffs against six of the defendants mentioned in the original bills, and on April 23rd a second petition was filed against Sidney Grant, an attorney who had appeared for the defendants at the injunction hearing. These two petitions prayed that each of the respondents be adjudged in contempt on the ground that each of them in violation of the injunction had addressed meetings urging the continuation of the strike, and that three of them, Hapgood, Mackesy, and Henry, had directed picketing and had incited a riot. On May 4th a hearing opened before a jury empanelled in accordance with the provisions of P. L. 1933, Chap. 261. The respondents were found guilty and sentenced to six months in jail.

R. S. 1930, Chap. 91, Sec. 67, in accordance with which the contempt petitions purport to have been filed, provides that "No ap-

peal lies from any order or decree for such punishment, nor shall exceptions thereto be allowed, save upon questions of jurisdiction." Exceptions were taken and allowed by the court, if allowable. Certain of these question the jurisdiction of the court. The exceptions were argued at the September 1937 Term of the Law Court. The record and the transcript of the evidence required by the presiding Justice to be a part of the bill were only partially included, and the exceptions were dismissed in order that the omission might be supplied. *Charles Cushman Co. et al.* v. *Mackesy et al; Venus Shoe Mfg. Co.* v. *Same,* 135 Me., 294, 195 A., 365. The corrected record is now before us.

The respondents claim that the court was without jurisdiction to render any judgment against them because the contempt petitions on which the proceeding was founded were not under oath. This was a defect which was not called to the attention of the presiding Justice and possibly was not noticed by respondents' counsel until after the hearing had ended. In fact it is not set forth specifically in the bill of exceptions. This is not, however, of importance for a want of jurisdiction is fatal in every stage of a cause and may be brought to the attention of the court at any time. *Darling Automobile Company* v. *Hall et al.,* 135 Me., 382, 197 A., 558; *Powers* v. *Mitchell,* 75 Me., 364. The petition against Sidney Grant was not even signed by a party but only by the attorneys for one of the parties. The procedure authorizing punishment for contempt for disobedience of an injunction is governed by statute. R. S. 1930, Chap. 91, Sec. 67. This reads as follows:

"Whenever a party complains in writing, and under oath, that the process, decree, or order of court, which is not for the payment of money only, has been disregarded or disobeyed by any person, summary process shall issue by order of any justice, requiring such person to appear on a day certain and show cause why he should not be adjudged guilty of contempt, and such process shall fix a time for answer to the complaint, and may fix a time for hearing on oral testimony, depositions, or affidavits, or may fix successive times for proof, counter proof, and proof in rebuttal, or the time for hearing and manner of proof may be subsequently ordered upon the return day or

thereafter. The court may, for good cause, enlarge the time for such hearing. If the person so summoned does not appear as directed, or does not attend the hearing at the time appointed therefor, as enlarged, or if, upon hearing, he is found guilty of such disregard or disobedience, he shall be adjudged in contempt, and the court may issue a capias to bring him before it to receive sentence, and may punish him by such reasonable fine or imprisonment as the case requires. The court may allow such offender to give bail to appear at a time certain, when such punishment may be imposed, if he continues in contempt. But when a second time found guilty of contempt in disregarding or disobeying the same order or decree, no bail shall be allowed. When such person purges himself of his contempt, the justice may remit such fine or imprisonment or any portion thereof. No appeal lies from any order or decree for such punishment, nor shall exceptions thereto be allowed, save upon questions of jurisdiction, nor in any case shall such exceptions suspend the enforcement of any such order or decree, unless the court so directs."

This provision was first enacted in 1881, P. L. 1881, Chap. 68, Sec. 23, and has come down without change through the various revisions of the statutes in 1883, Chap. 77, Sec. 33, 1903, Chap. 79, Sec. 36, 1916, Chap. 82, Sec. 36, and 1930, Chap. 91, Sec. 67. It has been amended by the provisions of P. L. 1933, Chap. 261, but not with respect to the steps to be taken to initiate the proceedings.

At the time that Maine became a separate state in 1820, the Supreme Judicial Court was not granted general equity powers. Jurisdiction was given in certain specified cases. From time to time this was enlarged; but it was not until 1874 that full equity powers were granted. Our Court has consistently held that it has no equitable jurisdiction except in so far as it may have been conferred by legislative enactment. *Tuscan* v. *Smith*, 130 Me., 36, 153 A., 289.

In 1881, after the exercise by the court of this broad authority for a period of seven years, it was apparently felt advisable by the legislature to specify in detail the rules to govern the use of it. These were set forth with great clearness in the statute enacted at

that time. This was entitled "An Act to Regulate the Practice in Equity Proceedings." It was, however, something more than a direction or guide on procedural problems. This act was incorporated in the revision of the statutes in 1883 under the heading "Equity Powers" in that portion of Chap. 77 entitled "Supreme Judicial Court. Organization. Jurisdiction and Powers." R. S. 1883, Chap. 77. With minor modifications and some additions the provisions of this law are now incorporated in R. S. 1930, Chap. 91, relating in part to the equity powers of the Supreme Judicial and Superior Courts.

The framers of the original act, realizing that the authority to punish for contempt was a necessary attribute of a court invested with equity jurisdiction, inserted Section 23 to define and to limit the manner in which such power should be exercised.

The power of courts to punish for contempt has existed from earliest times. It was useless to establish courts unless they had authority to punish acts which might interrupt the orderly course of judicial procedure; and it was likewise futile to confer jurisdiction to issue orders or injunctions without the power to enforce obedience to such decrees.

Contempts are of two kinds. There are those which occur in the presence of the court, which tend to bring the court into disrepute and interfere with the orderly conduct of judicial proceedings; and there are those, of which the court does not have first-hand information, for example those arising out of the failure to obey some order which the court has lawfully made. The procedure for punishment in the two cases is different. In the first the court may forthwith on its own initiative punish the offender; in the second the matter must be brought to the court's attention by some formal pleading and sentence may be imposed only after a hearing. *Androscoggin & Kennebec Railroad Company* v. *Androscoggin Railroad Company*, 49 Me., 392. Contempts of this latter kind are sometimes divided into two classes, depending on whether the sentence imposed is punitive—to vindicate the authority of the court, or remedial—to compel obedience to a decree. *Gompers* v. *Buck's Stove & Range Company*, 221 U. S., 418, 31 S. Ct., 492. In this jurisdiction the distinction is not of importance, for the procedure in both cases, in so far as equity decrees are concerned, is governed

by the statutory provisions above mentioned. *Cheney* v. *Richards,* 130 Me., 288, 155 A., 642.

From earliest times courts have consistently required that the petition or complaint on which the process is issued to bring a contemnor before the court should be under oath or supported by affidavit. Blackstone's Commentaries, 1807 Ed., Vol. 4, 286. Judge Daly, in *The People ex rel, Larocque* v. *Murphy,* 1 Daly, 462, 467, points out that the principle, on which such practice is based, is as old as the reign of Edward III. See also *Murdock's Case,* 2 Bland (Md.), 461, 486; *Ex parte Biggers,* 85 Fla., 322, 341, 95 So., 763; *Ex parte Duncan,* 78 Tex. Crim. App., 447, 182 S. W., 313, 2 A. L. R. 222. One of the older encyclopaedias, 4 Enc. Pl. & Pr., 779, summarizing the law as it existed more than forty years ago, says:

"The almost universal method by which contempt proceedings are begun is by an affidavit, and an examination of the authorities will generally disclose that in all contempt proceedings, save for such as are committed in the court's immediate presence, an affidavit is essential."

In a note to *Ex parte Duncan,* supra, 2 A. L. R., 225, we find the following statement:

"It is well settled that cases of contempt not committed in the immediate view or presence of the court must be brought to the attention of the court by a statement of the facts by persons who witnessed them or have knowledge of them (see R. C. L. tit. Contempt, p. 531), and the rule seems to be uniformly recognized that this statement must be made under oath, either in the form of an affidavit or by some other sworn statement."

There can be no doubt that the purpose of our statute is declaratory of what had been the practice from earliest times.

The question presented by the arguments in this case is whether the requirement of the statute that the complaint must be verified is jurisdictional. We must hold that it is and if so the defect is fatal, for jurisdiction can not be conferred even by consent of the parties. A waiver is unavailing. *State* v. *Bonney,* 34 Me., 223; *Milliken* v.

*Morey*, 85 Me., 340, 27 A., 188; *Darling Automobile Company* v. *Hall et al.*, supra.

No Maine case has been cited dealing precisely with the point here raised. By analogy, however, considerable light is thrown on the problem. Thus it has been held that an indictment not certified as "a true bill" is void. *Webster's Case*, 5 Me., 432. The same result follows if an indictment is not found upon oath. *State* v. *McAllister*, 26 Me., 374. A warrant for arrest is void without a seal. *State* v. *Drake*, 36 Me., 366. See also *State* v. *Smith*, 99 Me., 164, 165, 58 A., 779. Likewise a poor debtor proceeding is void, if the citation to the creditor bears no seal. *Miller* v. *Wiseman*, 125 Me., 4, 130 A., 504.

In *Pinkham* v. *Jennings*, 123 Me., 343, 122 A., 873, a writ had neither a seal nor the signature of the clerk. The plaintiff claimed that the defendant by pleading the general issue had waived the defects. It was held that there was no jurisdiction and that want of jurisdiction could not be waived. If proceedings defective in such particulars are void, does not the same result follow in the case now before us?

The exact point in issue has been passed on by many courts and the overwhelming weight of authority is that the failure to verify a complaint is fatal. There is nothing before the court.

In *Hurley* v. *Commonwealth*, 188 Mass., 443, 74 N. E., 677, the respondent was before the court on a complaint for contempt made by a prosecuting officer of the court. It was held that such a complaint should be verified, but that a formal presentation by a sworn prosecuting officer was sufficient verification to justify judicial action. The court suggests, however, that this would only be the case "in the absence of a statute or of an established rule of law requiring that in all cases the complaint itself shall be sworn to." Such a statute we have in Maine.

The case of *Robertson* v. *State*, 20 Ala. App., 514, 104, So., 561, is in some respects very similar to that before us. The petitioner was cited for contempt of an equity decree ordering him to pay alimony. The affidavit annexed to the petition alleged the facts to be true according to the best of deponent's "knowledge, information and belief." The court, deciding that this form of affidavit was insufficient, enters into a lengthy discussion of the authorities and holds

that a contempt complaint, unverified or not accompanied by an affidavit in proper form, gives to the court no jurisdiction to hear the case. On a petition for habeas corpus, the petitioner was discharged.

The case of *Ex parte Gunnels*, 25 Ala. App., 577, 151 So., 605, is to the same effect. The court says, page 581, 151 So., page 608, "We hold that complainant's verification of her petition in the contempt proceedings instituted in the court below was insufficient, and that the same did not invest the court below with jurisdiction to render a decree, or to pronounce a judgment adjudging the respondent in contempt."

*In re McCarty*, 154 Cal., 534, 98 P., 540, is a similar case. The court says, page 539, 98 P., page 542: "Where the contempt is a constructive one, in order to invest the court with jurisdiction to proceed to punish for it, it is essentially a prerequisite to the exercise of such jurisdiction that an affidavit setting forth the fact of noncompliance with the order should have been presented to the court."

In *Ex parte Duncan*, supra, the court holds that unless a petition for contempt is sworn to, the court has no jurisdiction.

*In re Emery T. Wood*, 82 Mich., 75, 45 N. W., 1113, was a case of a habeas corpus petition to secure the release of one who had been committed for contempt. There was no affidavit accompanying the complaint setting forth the contempt. The court said, page 83, 45 N. W., page 1116: "In the case under consideration, the fact was not made to appear by affidavit upon which the alleged contempt proceedings are predicated; and the court therefore obtained no jurisdiction either to order Mr. Wood to show cause, or to cause him to be arrested for the misconduct alleged. A person can not be deprived of his personal liberty except in the mode pointed out by law."

*Batchelder* v. *Moore*, 42 Cal., 412, came before the court on certiorari to review a commitment for contempt. The California statute provided that when a contempt was not committed in the presence of the court, an affidavit setting forth the contempt should be presented. The court held that without a proper affidavit there was no jurisdiction. The court said, page 414: "The power of a court to punish for an alleged contempt of its authority, though undoubted, is in its nature arbitrary, and its exercise is not to be

upheld, except under the circumstances and in the manner prescribed by law."

*State ex rel Conn*, 37 Ore., 596, 62 P., 289, is to the same effect as the preceding case. The court said, page 599, 62 P., page 290: "Indeed, a proper regard for the liberty of the citizen forbids any proceeding by which he may be deprived of his liberty without the information furnished by such an affidavit, and so the courts hold."

The opinion in *The People ex rel, Larocque* v. *Murphy*, supra, states that, if there is no affidavit accompanying the complaint for contempt, the court is without jurisdiction. The court said, pages 467–468: "When the misconduct is not committed in the presence of the Court, the statute requires due proof by affidavit of the facts charged. This is requisite to give the Court jurisdiction to act in the matter of a contempt alleged to have been committed out of its presence; and without this, a court has no authority to order a party to be arrested and brought before it, and to adjudge upon the matter of the alleged contempt. . . . The attachment was therefore issued without due proof by affidavit, and was, together with the commitment founded upon it, entirely without authority. It may be said that sufficient appeared in the defendant's answers to the interrogatories, without resorting to the affidavits upon which the attachment was issued, to show that he had been guilty of a contempt. I doubt if his answers to the interrogatories make out a case of intentional disobedience to the order of the Court; or if they do, I doubt if that would help the matter. It is sufficient to say that he was arrested, brought before the Court, and compelled to answer interrogatories without any authority in law, and as the subsequent commitment necessarily relates back to, and includes, the facts and allegations which constituted the ground for his arrest in the first instance, the one can not be severed from the other. The proceeding, in its inception, was void for the want of jurisdiction. (*Denning* v. *Corwin*, 11 Wend., 647), and as the commitment was founded upon the proceeding, it was equally void."

It would add nothing to discuss the large number of other cases which affirm this same doctrine. A few of them we merely cite. *State* v. *Harvey*, 16 N. D., 151, 112 N. W., 52; *Denny* v. *State*, 203 Ind., 682, 182 N. E., 313; *State* v. *Gallup*, 1 Kan. App., 618, 42 P., 406; *In re Eastern Idaho Loan & Trust Co.*, 49 Ida., 280, 288 P., 157;

*Herdman* v. *State*, 54 Neb., 626, 74 N. W., 1097; *Belangee* v. *Nebraska*, 97 Neb., 184, 149 N. W., 415; *Freeman* v. *City of Huron*, 8 S. D., 435, 66 N. W., 928; *In re Solberg*, 51 S. D., 246, 213 N. W., 9; *In re Roth*, 3 Cal. App. (2d), 226, 39 P., 2d., 490; *Kirby et al* v. *Chicago, Rock Island & Pacific Railway Company*, 51 Colo., 82, 116 P., 150; *State, ex rel Gemmell, Relator* v. *Clancy, Judge Respondent*, 24 Mont., 359, 61 P., 987; *Ex Parte Hedden*, 29 Nev., 352, 90 P., 737; *State* v. *Blackwell*, 10 S. C., 35; *Wilson* v. *The Territory of Wyoming*, 1 Wyo., 155; *State* v. *Driscoll*, 151 Ore., 363, 50 P., 581. See also *Kelly* v. *United States*, 250 Fed., 947; *Campbell* v. *Judge of Recorder's Court*, 244 Mich., 165, 221 N. W., 138.

Counsel for complainants argue that the court had jurisdiction because of the inherent power of courts at common law to punish for contempt. There is no doubt of this power but it must nevertheless be exercised in conformity with those rules which from time immemorial have been followed and are now embodied in our statute governing the procedure in such cases. Nor does it make any difference that in all the subsequent proceedings in this case the provisions of the statute may have been complied with. The oath called for here was not as counsel claim merely a procedural requirement which could be waived. It was essential to confer jurisdiction.

Counsel cite the case of *Clark* v. *United States*, 61 F. (2d), 695. This is not an authority that a statutory requirement governing the initiation of contempt proceedings can be waived. The opinion contains a general discussion of the sufficiency of the complaint and holds that, if it gives notice to the respondent of the charge, it is sufficient even though it may not have the technical accuracy of an indictment.

The case cites the well-known comment of Chief Justice Taft in *Ex parte Grossman*, 267 U. S., 87, 117, 45 S. Ct., 332, 336, to the effect that: "Contempt proceedings are *sui generis* because they are not hedged about with all the safeguards provided in the bill of rights for protecting one accused of ordinary crime from the danger of unjust conviction." That all such safeguards are not granted to one charged with contempt does not mean, however, that none of them are. Rather should it be true that for that very reason there should be a scrupulous adherence to those require-

ments which are designed to protect one accused as a contemnor. As a matter of fact, this was the very bearing of the Chief Justice's statement, which was given as a reason why the President should have the pardoning power in cases of contempt.

Counsel cite but three cases which seem to touch the point at issue. *People ex rel Barnes*, 147 N. Y., 290, 295, 41 N. E., 700; *Aaron* v. *United States*, 155 Fed., 833; *Sona* v. *Aluminum Casting Co.*, 214 Fed., 936. The opinion in the first contains a rather casual dictum that the want of a verification on a complaint for contempt can be waived. The second is a decision of the Circuit Court of Appeals of the Eighth Circuit to the same effect. It is based on the dictum in the Barnes case, *supra*, and on three citations not one of which sustains the point. The third case is a *per curiam* decision of the Circuit Court of Appeals for the Sixth Circuit.

In any event these cases are opposed to the overwhelming weight of authority which holds that the want of an oath on a complaint for contempt is a matter which goes to the jurisdiction, and not one of them so far as the opinions show involved a statute which as in Maine expressly provides for a complaint under oath.

That the complaints in the case before us were not sworn to was not brought to the attention of the justice who heard the case; and the defect was not commented on until the argument before the Law Court. That fact does not, however, alter the result. The error is not technical. It is fundamental; for no man, however reprehensible his conduct, may be deprived of his liberty except in accordance with the law. The Court was without jurisdiction to impose sentence on the respondents and the entry must be

*Contempt proceedings dismissed for lack of verification.*