Stephen K. PRIOR

v.

STATE of Maine et al.

Supreme Judicial Court of Maine.

May 14, 1970.

**487**

---

Paul F. Zendzian, Rockland, for plaintiff.

John W. Benoit, Jr., Deputy Atty. Gen., Augusta, for defendants.

Before WEBBER, MARDEN, DUFRESNE, WEATHERBEE, and POMEROY, JJ.

MARDEN, Justice.

On appeal from the denial of post-conviction relief. Appellant was charged by indictment with escape from the Knox County Jail while undergoing lawful confinement for want of bail guaranteeing his appearance before the trial court. Upon conviction, he was sentenced to a term in the Maine State Prison.

He petitioned for post-conviction relief alleging:

(1) That the indictment was invalid for several reasons, one of which was that it was not endorsed "A True Bill," although signed by a person as Foreman of the Grand Jury, which point he now presses.

(2) That his sentence was imposed in violation of the equal protection clause of the Constitution inasmuch as he was held in Jail for want of bail because of his indigency.

The single Justice, to whom the case was assigned, found against the petitioner, and he appealed, stating five points, only two of which are briefed, namely, the insufficiency of the indictment and the denial of "equal protection" phase of his complaint.

Only the challenge to the sufficiency of the indictment was argued, but it is understood that the "equal protection" feature is not waived and it will be discussed.

This latter issue is best expressed in the words of appellant's brief where he says:

"An indigent person, charged with escape from the place to which he had been committed for lack of bail, is denied Equal Protection of the law in violation of his rights guaranteed by state and federal constitutions when another person, not indigent, who posted bail and was not committed, is not subjected to criminal penalties for violating the conditions upon which his bail is granted."

He urges that a non-indigent who is able to furnish recognizance for appearance at court is not subjected to criminal penalties for violating the conditions of his recognizance, where the indigent unable to furnish recognizance is so subjected. In taking this position he is equating default of bail with his escape from jail.

This, of course, answers itself. Petitioner was not subjected to criminal penalties for non-appearance at court, but for a criminal offense of escaping from Jail, totally independent of the terms of any recognizance.

As to the sufficiency of the indictment, Maine has traditionally framed indictments according to the following form:

"The Grand Jurors on their Oath present that:" the accused has disobeyed some criminal prohibition "against the peace of the State and contrary to the statute in such case made and provided" followed by "A True Bill

_____"
Foreman

The necessity of the endorsement or certificate "A True Bill

_____"
Foreman

was fixed in Webster's Case, 5 Me. 432 (1828).

We are now faced with a reconsideration of *Webster's Case,*—whether to affirm it and hold the current indictment bad or re-examine its reasoning.

*Webster's Case* referred to the then practice in England that "there, indictments (bills) are drawn and preferred to the grand jury in the name of the king, but at the suit of any private prosecutor. When they have heard the evidence, if they think it a groundless accusation, they indorse on the back of the bill, 'not a true bill,' or 'not found.' If they are satisfied of the truth of the accusation, they indorse upon it 'a true bill;' and the indictment is then said to be found; and the party then stands indicted." (At page 432).

The Court pointed out that in Massachusetts and Maine the customary practice was unlike that of England, in that the indictments were drawn only after the grand jury considered the complaint, but after the finding the indictment was endorsed "A true bill. A. B. Foreman." This endorsement, the Court said, showed that the foreman professed "to act as the proper organ of the grand jury; but when the words, which we call a certificate, are not prefixed, the signature of the foreman does not necessarily import any thing more than his own opinion." (At page 433). But for such attestation it would be necessary "for each member of the grand jury, who voted in favor of the bill, to sanction it as true, (as is still the custom orally in civil cases) by his own individual signature;" but such proceeding, by disclosing the opinions of the jurors would, "lead to unpleasant and injurious consequences."[1] (At page 434).

The Court observed "that the long, uninterrupted and uniform practice in the parent commonwealth, and continued in this State, * * * may justly be considered as our common law on the subject; * * *." (At page 433).

In holding the *Webster* indictment invalid the Court said:

"We are not disposed to change the course of practice, or introduce any new principles in regard to the subject under consideration. It is true, that this decision may seem to favor form more than substance; but we must remember that in criminal proceedings, more strictness has always been applied, than in civil, * * *." (At page 434).

While the decision in *Webster's Case* seems to have placed reliance on the practice in the parent Commonwealth of Massachusetts, the case of Commonwealth v. Smyth, 11 Cushing (65 Mass.) 473, 475 (1853) held that the omission of the words "a true bill" did not vitiate an indictment. The Massachusetts court recognized the English practice, but founded its decision on the fact that the Massachusetts practice was "widely different, and involve(s) no necessity for any similar indorsement or mark of discrimination, after their (grand jury's) several presentments."

The Massachusetts court discounted the reasoning in *Webster's Case* relative the absence of the words "a true bill" as indicating that the indictment expressed only the foreman's conclusion inasmuch as "the jury are not only sworn to keep their own counsel, but are expressly forbidden to state, * * * how any one of their number voted, or what opinion he expressed in relation to any question before them. Rev.Sts. c. 136, §§ 5, 13." (At page 477). From the reference statutes came our "perpetual secrecy" statute of 1821 and our "improper disclosure" statute in 1841.

In the interim between *Webster's Case* and *Smyth, supra,* the State of New Hamp-

---

1. The statute prohibiting disclosure of "how any member of the jury voted" was adopted in Maine in 1841 and appeared as 15 M.R.S.A. § 1257, prior to its repeal in 1965. The obligation for perpetual secrecy pertaining to grand jury proceedings, now 15 M.R.S.A. § 1252, has been statutorily imposed since statehood.

shire in State v. Freeman, 13 N.H. 488, 490 (1843) after pointing out the differences in the practice between England and New Hampshire held that:

"The reason for the English form does not exist, for it is unnecessary that they (grand jury) should certify that their own proceedings are true."

and that an indictment without the phrase "a true bill" was valid.

The case of Frisbie v. United States, 157 U.S. 160, 164, 15 S.Ct. 586, 588, 39 L.Ed. 657 (1895) held that the omission of the indorsement of an indictment as "a true bill" is not necessarily fatal, that the indorsement was a matter of form which was waived if objection were not made in the first instance and before trial "for it does not go to the substance of the charge, but only to the form in which it is presented."

It is true that *Webster's Case* was recognized as law in State v. Reed, 67 Me. 127 (1877) and recognized again in Cushman Co. et al. v. Mackesy, 135 Me. 490, 200 A. 505 (1938) as being as of weight by analogy to the problem then before the Court.

We are no longer impressed that traditional practice alone gives rational support to reaffirmance of *Webster's Case*.

We are also influenced by the adoption and purpose of the Rules of Criminal Procedure effective December 1, 1965. They are intended inter alia "to secure simplicity in procedure." Rule 2.

It is held that the words "a true Bill" of an endorsement or certificate is a matter of form, the absence of which is not fatal to the indictment. If, for reasons peculiar to a case, it is desired to challenge the lack of such phrase, it must be done by motion before trial or constitute a waiver under Rule 12, M.R.Crim.Proc.

*Webster's Case* is overruled pro tanto.

Appeal denied.

WILLIAMSON, C. J., did not sit.