Rockingham
No. 7975

TOWN OF NOTTINGHAM

v.

CEDAR WATERS, INC.

April 25, 1978

*Shute, Engel & Frasier,* of Exeter (*Robert L. Steuk,* by brief), for the plaintiff.

*Keefe, Dunnington & Cappiello,* of Dover (*Thomas C. Dunnington, Jr.,* by brief), for the defendant.

DOUGLAS, J. This is an appeal from a finding of contempt arising out of a dispute concerning enforcement of the zoning regulations of the town of Nottingham. We reverse the order below and clarify the distinction between civil and criminal contempt.

The defendant Cedar Waters, Inc., is the owner of a mobile home, located in the plaintiff town of Nottingham in an area that is zoned

"residential agricultural." The plaintiff sought to enjoin the defendant from maintaining a mobile home in the town without having it placed upon a "continuous permanent foundation of concrete or any other masonry wall" as was required by the town zoning ordinances then in effect. *But see* RSA 47:22-b (Supp. 1977) making such requirements invalid. After a hearing before a master, the Rockingham County Superior Court granted the injuction on September 29, 1976. The court ordered the defendant to comply with the zoning ordinance or remove the mobile home within 30 days. The defendant seasonably filed a reserved case, but later withdrew the appeal, thus causing the order to become final on December 3, 1976.

On February 9, 1977, a motion for contempt was then filed against Robert Bonser, who was the president of the defendant corporation and its principal stockholder. The motion for contempt was dismissed on February 24, 1977, on the grounds that Robert Bonser, in his individual capacity, was not a proper party to the suit. A second motion for contempt was filed naming Cedar Waters, Inc., as the contemnor. The court found the defendant corporation in contempt, ordered it to fully comply with the order of December 3, and ordered payment of attorney's fees in the amount of $500 and a fine of $50 a day for each day of noncompliance after May 2, 1977.

The defendant then filed a motion for clarification and requested an order to compel the plaintiff to submit detailed foundation plans that would meet the specifications of the ordinance as the plaintiff interpreted them. The motion was denied on May 6, 1977, and the defendant was ordered to pay an additional $200 in attorney's fees to the plaintiff. The defendant filed a motion for rehearing, which was denied on June 6, 1977.

A motion for a capias was filed in which the plaintiff alleged that the defendant had failed to pay fines and attorney's fees. The capias was heard on June 6. The defendant, with the approval of the court, was represented by a lay attorney. During the hearing, the attorney for the plaintiff made clear that he was before the court "on an equitable petition, not a criminal petition." He stressed that he was merely trying to enforce prior court orders in a "civil, equitable proceeding." Nevertheless, the court imposed a five-month jail sentence on Mr. Bonser without notifying either him or the defendant that it was considering the matter to be criminal contempt. The defendant and Robert Bonser seasonably excepted to the court's ruling, and *Perkins,* J., transferred the matter here.

Contempt is "an offense at common law—a specific and substantive offense" that is separate and distinct from the matter in litigation out of which the contempt arose. *State v. Towle*, 42 N.H. 540, 544 (1861). The character and purpose of the punishment distinguishes the two classes of contempt. In civil contempt, the punishment is remedial, coercive, and for the benefit of the complainant. Civil contempt proceedings may result in money fines payable to the complainant or in an indeterminate jail sentence until the contemnor complies with the court order. Thus the contemnor is said to carry the "keys to the jail" in his pocket and stands committed until he performs the affirmative act required by the court's order. *Gompers v. Buck Stove & Range Co.*, 221 U.S. 418 (1911); *Cheney v. Richards*, 130 Me. 288, 155 A. 642 (1931). The purpose of prosecution for criminal contempt is to protect the authority and vindicate the dignity of the court. The sentence is punitive and determinate, and no amount of repentance will remit it. *Stern v. Chandler*, 153 Me. 62, 134 A.2d 550 (1957).

Contempts are also either direct or indirect. A direct contempt is one committed in the presence of the court and in its immediate view, all elements of the contempt being clearly observable by the court. *See, e.g., Ex parte Terry*, 128 U.S. 289 (1888); cf. *State v. Costantino*, 107 R.I. 215, 266 A.2d 33 (1970). Indirect contempt is one committed outside the presence of the court and without the judge having full personal knowledge of every element of the contempt. Establishment of the contempt thus depends upon proof of facts of which the court could not take judicial notice. *Charles Cushman Co. v. Mackesy*, 135 Me. 490, 200 A. 505 (1938). The significance of the distinction between direct and indirect contempt lies in the procedural requirements to which the court must adhere.

Direct contempts may be punished summarily. The word summarily as used in this context does not refer to the timing of the action, but to the procedure. Summary procedure dispenses with the issuance of process, service of complaint and answer, holding of hearings, taking of evidence, listening to arguments, filing of legal memoranda, submission of findings and all that goes with a conventional court trial. *Sacher v. United States*, 343 U.S. 1 (1952). The summary contempt power should be used only when the contemnor's conduct in the presence of the court is openly threatening the orderly procedure of the court or publicly defying its authority. *Charles Cushman Co. v. Mackesy supra*. The contemptuous behavior

must constitute a threat that immediately imperils the administration of justice.

For direct criminal contempts to be punished summarily, the court must give the contemnor oral notice of the conduct observed thought to constitute contempt. The contemnor must be given an opportunity to speak in his defense. If the contemnor is found guilty the court may then pronounce sentence. The court must prepare, sign, and enter on the record an order of contempt, reciting the facts the court observed and which gave rise to the contempt. *See, e.g., State v. Linsky*, 117 N.H. 866, 379 A.2d 813 (1977). The court must open a separate numbered file entitled State v. (The Contemnor).

In the case at hand, the court had no request for a finding of criminal contempt. In any event the matter was an indirect contempt requiring proof and evidence before the court. To have properly treated this matter as an indirect criminal contempt, the court would have had to provide notice stating the time and place of hearing and the fact that the matter before the court was going to be a criminal contempt. The notice would have had to state the essential facts constituting the criminal contempt charged and allow a reasonable time for the preparation of a defense. The case should in all respects be treated as a misdemeanor; "the State must prove the elements of its case beyond a reasonable doubt." *State v. Linsky supra.* If indigent, the contemnor would, of course, be entitled to appointed counsel. The contemnor would be entitled to jury trial if the court intended to impose a sentence of greater than six months in the house of correction were the contemnor to be found guilty. *Id.*

Because criminal contempt is in fact treated the same as a crime, the right against self-incrimination applies. *In re Neff*, 20 Ohio App. 2d 213, 254 N.E.2d 25 (1969). This is distinguished from the right of allocution, which must be provided in a summary criminal contempt for direct contemptuous acts committed in the presence of the court; formal charges, right to counsel, and other procedural matters not being applicable because of the immediacy of the conduct and the need for prompt action by the judge before whom the contempt occurred. *See* Fed. R. Crim. P. 42(a). Essentially this matter should be clarified by superior court rule so that parties, attorneys and judges would be able to fairly administer, and distinguish between, criminal and civil contempt and direct versus indirect contempt. *See, e.g.,* Fed. R. Crim. P. 42.

In this case the court converted a civil into a criminal contempt without following the proper procedural steps and therefore the contempt must be set aside. *Coolbeth v. Berberian*, 354 A.2d 120 (R.I. 1976); *City of Pawtucket v. Council #70, AFSCME, Local 1012*, 353 A.2d 607 (R.I. 1976). *See generally Civil and Criminal Contempt in New Hampshire*, 17 N.H.B.J. 13 (1975).

*Exceptions sustained; remanded.*

All concurred.