Original
No. 78-139

*In re* DOE

June 8, 1978

*New Hampshire Legal Assistance*, of Concord (*Peter J. Leahy* orally), guardian ad litem for Jane Doe.

*Thomas D. Rath*, attorney general (*Richard McNamara*, assistant attorney general, orally), for the State.

DOUGLAS, J.   Petitioner is a thirteen-year-old female who was the alleged victim of a statutory rape. The accused was brought to trial on Monday, June 5, 1978, in the Merrimack County Superior Court, and the petitioner was subpoenaed as a witness. A guardian ad litem, Peter J. Leahy, Esq., was appointed to represent her.

After being called to the witness stand by the State on Monday, June 5, 1978, the petitioner refused to testify. The attorney general

granted her immunity, and the guardian ad litem advised her that she had no legal right to refuse to testify. The State called her as a witness, and she still refused to testify. The court declared a recess and petitioner was allowed to confer with her guardian. She was recalled to the stand and once again refused to testify. At this point, the Trial Court (*Keller*, C.J.) called a recess, took the petitioner into chambers and explained the consequences of refusal to her. When petitioner again refused to testify, the court ordered her committed to the Youth Development Center until she agreed to testify. The petitioner, by her guardian, has brought this original habeas corpus petition here.

In *Nottingham v. Cedar Waters, Inc.*, 118 N.H. 282, 385 A.2d 851 (1978), this court pointed out that

> [c]ontempt is "an offense at common law—a specific and substantive offense" that is separate and distinct from the matter in litigation out of which the contempt arose. *State v. Towle*, 42 N.H. 540, 544 (1861). The character and purpose of the punishment distinguishes the two classes of contempt. In civil contempt, the punishment is remedial, coercive, and for the benefit of the complainant. Civil contempt proceedings may result in money fines payable to the complainant or in an indeterminate jail sentence until the contemnor complies with the court order. Thus the contemnor is said to carry the "keys to the jail" in his pocket and stands committed until he performs the affirmative act required by the court's order. *Gompers v. Buck Stove & Range Co.*, 221 U.S. 418 (1911); *Cheney v. Richards*, 130 Me. 288, 155 A. 642 (1931).

Petitioner's counsel conceded at oral argument that the contempt at issue is a civil contempt, which is purgeable anytime the petitioner chooses to come forward and testify. We conclude that there is no basis to treat this minor differently from an adult for purposes of civil contempt. *In Re Grand Jury Proceedings*, 491 F.2d 42, 45 (D.C. Cir. 1974) (per curiam); *see Young v. Knight*, 329 S.W.2d 195 (Ky. 1959); Annot., 77 A.L.R.2d 1004 (1961). Nothing in RSA ch. 169 mandates a different result in this case.

Petitioner's counsel argued, however, that the possibility that the court could have imposed criminal contempt rendered the contempt proceeding a matter for the juvenile court. The nature of a proceeding is not determined by what can happen, but what does in fact happen. *Cf. Codispoti v. Pennsylvania*, 418 U.S. 506 (1974) (jury trial not necessary for criminal contempt punishable by sentence

of six months or more unless such sentence will actually be imposed). In this case, civil contempt was imposed. Thus we need not be concerned with the effect of a criminal contempt conviction.

*Writ of habeas corpus dismissed.*

All concurred.