**In re Herman O. ROUSSIN, Debtor.**

**Herman O. ROUSSIN, Plaintiff,**

**v.**

**Michael JOHNSON, Esquire, Merrimack County Attorney, Defendant.**

Bankruptcy No. 85–59.
Adv. No. 88–16.

United States Bankruptcy Court,
D. New Hampshire.

Aug. 25, 1988.

Howard A. Helrich, Asst. Merrimack Co. Atty., Concord, N.H., for defendant.

Paul A. Rinden, Concord, N.H., for plaintiff.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

This chapter 7 case is presently before the court upon the plaintiff's Complaint for Injunction, which requests that the defendant, Michael Johnson, Esquire, the Merrimack County Attorney for the State of New Hampshire, be permanently enjoined from prosecuting the plaintiff on a citation for criminal contempt. The defendant has filed an Answer, and both parties have filed trial memoranda.

The issue in this adversary proceeding is whether the state proceeding is a legitimate criminal contempt proceeding to protect the state court's authority and vindicate its dignity, or whether it is a disguised effort to collect a discharged debt. The plaintiff, a discharged debtor, contends that the state proceeding is based on the plaintiff's failure to comply with a state court order mandating that a discharged debt be paid, which the plaintiff contends is in violation of 11 U.S.C. § 524 and 11 U.S.C. § 525(a). The defendant, a county prosecutor, responds that the state proceeding is not an attempt to collect a discharged debt, rather it is a prosecution for criminal contempt based upon the plaintiff's willful disregard of a prior state court order. The defendant maintains that the state is prosecuting for a punitive remedy, in order to vindicate the dignity of the state court.

*Parties and Facts Involved and Procedural Context*

In 1983 Constance Bailey obtained a judgment in the Merrimack County Superior Court for $1,885.00 against Herman O. Roussin. Roussin did not pay the judgment, and Bailey was unable to effect collection by writ of execution. Roussin

failed to appear at a subsequent hearing on Bailey's Motion for Periodic Payments. Bailey next filed a Petition For Contempt and notices were served in hand to the defendant and his attorney.

On February 5, 1985, Bailey's Petition For Contempt came on for hearing in the Merrimack County Superior Court before the Honorable Joseph A. DiClerico, Jr. Judge DiClerico found the plaintiff, Herman O. Roussin, to be liable for judgment, interest, and costs in the underlying civil action in the amount of $2,632.18, pursuant to RSA 524:6–a (Supp.1986). Roussin was ordered to "take immediate steps to sell his Honda motorcycle and upon the sale of the same [to] pay over the net proceeds to [Bailey's] attorney to be applied against [Roussin's] obligation." Notice of Judge DiClerico's decision was mailed to Roussin on February 6, 1985, the day after the hearing on the Petition For Contempt. However, subsequent to the hearing on February 5, 1985 and prior to receipt of Judge DiClerico's Order on February 6, 1985, Roussin sold his Honda motorcycle for $900: Roussin gave $500 to his attorney for purposes of initiating bankruptcy proceedings and retained $400 for himself for living expenses. On February 12, 1985, Roussin filed a petition under chapter 7 of the Bankruptcy Code.

In May of 1985, Bailey filed a Motion to Hold Defendant in Contempt for Roussin's alleged failure to comply with the February 5, 1985 court order. Roussin filed an Answer and Objection to Bailey's Motion to Hold Defendant in Contempt and a Cross Motion asserting that Bailey's motion violated the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362, and that it essentially sought to recover an improper preference contrary to 11 U.S.C. § 547. In September, 1986, Roussin filed a second Answer to Bailey's Motion for Contempt asserting that Bailey, under 11 U.S.C. § 524, could not proceed against Roussin because the underlying judgment debt had been eliminated by the bankruptcy court's granting of a discharge in July, 1985.[1]

The discharge order was actually entered by this court on January 29, 1987. The Notice Of Discharge was sent to all creditors on February 4, 1987, and the bankruptcy case was closed on February 5, 1987. On April 17, 1987, the Merrimack County Superior Court denied Bailey's Motion to Hold Defendant in Contempt as an attempt to collect a pre-petition debt precluded by the bankruptcy filing. However, the state court ordered Roussin "to appear and show cause why he should not be held in criminal contempt for failing to comply with the Court order of February 5, 1985 ... when he had the ability to do so." *Citation For Criminal Contempt*, No. 82–C–148, slip op. at 6 (Merrimack County Superior Court, New Hampshire, April 17, 1987) (DiClerico, J.).

On December 30, 1987, Roussin filed a petition to reopen this bankruptcy case, which this court granted on January 5, 1988, but "only to extent that this bankruptcy case is hereby reopened; any request for injunctive relief must be upon appropriate adversary complaint and motion." Later that same day, Roussin filed a Complaint requesting that Michael Johnson, Esquire, Merrimack County Prosecutor, be temporarily enjoined from prosecuting Roussin on the criminal contempt charges. Telephonic notice was given and the Complaint was considered at an expedited hearing in the afternoon of January 5, 1988.

After receiving evidence and hearing arguments, the court denied the request for a temporary restraining order "except to the extent that the defendant, Constance Bailey Norman, and her agents, are hereby restrained from moving for, or receiving, any payment directly or indirectly of their debt owing from the debtor, Herman O. Roussin, which was discharged in these bankruptcy proceedings by virtue of this

---

1. The date given by Roussin in this pleading was in error, apparently confusing a no-asset report with a discharge order. According to this court's records, Roussin was granted a discharge on *January 29, 1987*, notice of which was sent to all creditors on February 4, 1987. Previously, in *July, 1985*, the chapter 7 trustee filed a "No Asset" Report. However, Roussin was not discharged at that time.

Court's Order of Discharge entered January 29, 1987." *See Herman O. Roussin v. Constance Bailey Norman and Michael Johnson, Esquire*, ADV # 88–1.

Subsequently, on March 11, 1988, Roussin filed the complaint in *this* adversary proceeding, ADV # 88–16, requesting that Johnson be permanently enjoined from prosecuting Roussin on the criminal contempt charges. A trial was held on May 10, 1988.

Roussin's position is that there is no basis for the state court criminal contempt proceeding, and therefore the proceeding is not an attempt to vindicate the state court's dignity. Roussin avers that, pursuant to N.H. RSA 524:6–a, if a person does not pay a judgment then the state court has the authority to order time payments of such judgment, and that failure to make those time payments constitutes *civil* contempt. Roussin maintains that there was no violation of RSA ch. 524, because the state court never ordered Roussin to make time payments.

Plaintiff cites *Sheedy v. Merrimack County Superior Court*, 128 N.H. 51, 509 A.2d 144 (1986) for the principle that when no specific time payments are ordered, a person cannot be prosecuted for contempt for failure to make said payments. The plaintiff further cites *Sheedy v. Merrimack County Superior Court* for the principle that a person is only required to pay amounts that he can afford, and the person is permitted to keep enough money to pay for daily living expenses. Roussin maintains that the $900 he received from the sale of his motorcycle was only enough money for instituting the bankruptcy proceeding, and for paying his daily living expenses. In summary, Roussin contends that he was not in contempt because he was never ordered to make time payments and, alternatively, even if he was ordered to make time payments he was not in contempt because he did not have sufficient funds to both make the time payments and pay his daily living expenses.

Defendant contends that the state court does have a basis for the criminal contempt proceeding, namely that Roussin insulted the state court's dignity by knowingly failing to comply with the state court's order when he allegedly had the ability to do so. The defendant states that the criminal proceeding is based upon the state court's common law authority to vindicate the court's dignity, and the prosecution is accordingly a "true criminal proceeding." Therefore, the defendant maintains that, pursuant to the principles of federalism set forth in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and progeny, this court has no jurisdiction to enjoin the state criminal action initiated against Roussin.

Defendant acknowledges Roussin's right to file for bankruptcy, and insists that the criminal proceeding is not motivated by a desire to punish Roussin for circumventing the state court's order vis-a-vis bankruptcy. Defendant, the state prosecutor who was directed to institute the criminal contempt proceeding, stated that he has never met Bailey or had any contact with her in regard to initiating the criminal proceeding. Judge DiClerico, the state court judge whose order was disobeyed, has recused himself from any proceedings regarding the charge of criminal contempt. The defendant asserts that the criminal contempt proceeding is punitive in its nature and is for the purpose of vindicating the dignity of the court, rather than being remedial in nature for the purpose of benefiting a creditor:

> The case of *State v. Herman O. Roussin*, Merrimack County Superior Court Docket # 87–S–353–O, charges the defendant with criminal contempt. While the action may have risen from the case of *Bailey v. Roussin*, Merrimack County Superior Court Docket # 82–C–148, Bailey is not a party or complainant in the criminal action. Bailey will receive no benefit as a result of the criminal prosecution the debtor is attempting to enjoin. In the aforementioned case, the Court cited the debtor for contempt only upon learning that the debtor had intentionally failed to comply with an order of the Court, and that he had the ability at the time to comply.

*   *   *   *   *   *

The instant case is a prosecution for criminal contempt. Although at one time a creditor was involved in a collateral case with the plaintiff, the instant charge is a true criminal action in that it involves a vindication of public rights. No private individuals or creditors will benefit from the criminal prosecution, no restitution can be ordered in the case. The gravamen of the offense for which the plaintiff stands charged is that he offended the dignity of the State Court by knowingly failing to obey it's order when he had the ability to comply.

State's Trial Memorandum at 2–3 (dated and filed May 10, 1988).

During the trial the defendant testified that the State does not intend to proceed on Roussin's debt to Bailey, that no remedy that the State may seek will make Bailey whole, and that the State is seeking a punitive remedy rather than a restitution remedy. Defendant further testified that the State does not dispute that the underlying debt to Bailey was discharged, nor does the State dispute Roussin's right to file a petition with the bankruptcy court.

Defendant cites *Town of Nottingham v. Cedar Waters, Inc.*, 118 N.H. 282, 385 A.2d 851 (1978) as supporting the distinction between civil contempt proceedings and criminal contempt proceedings, and allowing the latter to proceed in order to "protect the authority and vindicate the dignity of the Court" despite Roussin's position as a discharged debtor. Defendant also cites *In re Milone*, 73 B.R. 452 (Bankr.N.H.1987) for the principle of law that a true criminal proceeding is not affected by bankruptcy proceedings involving the criminal defendant.

*Findings Of Fact And Rulings Of Law*

At the conclusion of the trial the court dictated tentative findings of fact and conclusions of law into the record, as set forth below. The court finds that the state court proceeding *is* a criminal proceeding by virtue of the common law authority of the state courts to vindicate their dignity. *Town of Epping v. Harvey*, 129 N.H. 688, 691, 531 A.2d 345 (1987); *Town of Notting-*

*ham v. Cedar Waters, Inc.*, 118 N.H. 282, 385 A.2d 851 (1978); *see also* Douglas, *Civil and Criminal Contempt in New Hampshire*, 17 N.H.B.J. 13 (1975). This is distinguished from civil contempt proceedings where the punishment is "remedial, coercive, and for the benefit of the [creditor]." *Town of Nottingham*, 118 N.H. at 285, 385 A.2d 851. There is nothing in the record to indicate that the initiation of the criminal proceeding was at the behest or instigation of any creditor of this debtor. Instead, it was entirely by *sua sponte* action of the state court judge involved. The court trial on the criminal contempt charge will be held before a different state court judge. The state court proceeding is not a transparent attempt to harass a bankruptcy debtor following his bankruptcy filing and discharge.

This court further finds that it is at least arguable that *using* funds *before* the bankruptcy filing could constitute a violation of the existing state court order, which might amount to criminal contempt. In the criminal contempt proceeding, it will be necessary for the state prosecutor to show the requisite intent by the debtor with regard to his actions at the time of the February 5, 1985 state court order. *See Barber v. Company*, 80 N.H. 507, 514–15, 120 A. 80 (1923); *State v. Collins*, 62 N.H. 694 (1882); *see also* Douglas, *Civil and Criminal Contempt in New Hampshire*, 17 N.H.B.J. 13, 25 (1975). Such showing will necessarily have to take into consideration all circumstances surrounding the entry of the state court order and the exercise of the right to file a federal bankruptcy proceeding. However, the issues surrounding that intent requirement are not relevant to this court's determination of plaintiff's Complaint seeking a permanent injunction against continuation of the criminal proceeding.

With regard to plaintiff's contention that he was not in contempt because that court never ordered him to make time payments, this court notes that the first sentence of the state court order dated February 5, 1985 reads, "This order is issued pursuant to RSA 524:6A." Plaintiff's alternative

contention that, even if he was ordered to make time payments, he was not in contempt because he needed the money to pay his living expenses may be relevant to the state court's determination of Roussin's intent, however it has no bearing on whether this court should issue a permanent injunction.

The principles of federalism recognize a strong state interest in administering state criminal justice without federal interference except in extraordinary circumstances. *See Anti–Injunction Act,* 28 U.S.C. § 2283; *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Kelly v. Robinson,* 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986); *In re Milone,* 73 B.R. 452, 456 (Bankr.N.H.1987). In *Younger,* the Supreme Court reversed a district court's grant of injunctive relief against a state criminal prosecution on the grounds that such an injunction violated 28 U.S.C. § 2283 and the federal policy "forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances." *Younger,* 401 U.S. at 41, 91 S.Ct. at 749 (footnote omitted).

Three statutory "special circumstances" in which a federal court may enjoin state court proceedings are set forth in the Anti–Injunction Act, 28 U.S.C. § 2283:

(1) When "expressly authorized by Act of Congress";

(2) When "necessary in aid of its jurisdiction"; and

(3) When necessary "to protect or effectuate its judgments."

The Court in *Younger* commented further: "In addition, a judicial exception to the longstanding policy evidenced by the statute has been made where a person about to be prosecuted in a state court can show that he will, if the proceeding in the state court is not enjoined, suffer irreparable damages." *Younger,* 401 U.S. at 43, 91 S.Ct. at 750, *citing ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) (footnote omitted).

Pursuant to the first statutory exception set forth above, 11 U.S.C. § 105 could be construed as an authorization, as required under 28 U.S.C. § 2283, for a court of the United States to stay proceedings in a state court. *See* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 317 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. Moreover, it has been recognized and argued that the second and third exceptions to the general anti-injunction policy apply herein in that this court has entered a discharge order and, arguably, it could be said that permitting the state criminal proceeding to go forward in this context undermines the fresh start philosophy underlying the Bankruptcy Code and the granting of a discharge in bankruptcy. *Cf. Local Loan v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934) and *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971) (a "fresh start" for the bankrupt is the underlying rationale for the bankruptcy laws).

The exception for bankruptcy courts from the anti-injunction policy does not apply, however, where the state court controversy does not involve property of the debtor within the jurisdiction of the bankruptcy court and where the assertion of jurisdiction by the state court is not otherwise inconsistent with the provisions of the Bankruptcy Code. *Callaway v. Benton,* 336 U.S. 132, 69 S.Ct. 435, 93 L.Ed. 553 (1949); *In re Erlin Manor Nursing Home, Inc.,* 36 B.R. 672, 676 (Bankr.Mass.1984). Further, the Bankruptcy Code provides that the automatic stay does not operate as a stay—

(1) under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor;

\*     \*     \*     \*     \*     \*

(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power....

11 U.S.C. §§ 362(b)(1) and (4). As noted in the following legislative statement that is part of the legislative history to 11 U.S.C. § 362(b):

The bankruptcy laws are not a haven for criminal offenders, but are designed to give relief from financial overextension.

Thus, criminal actions and proceedings may proceed in spite of bankruptcy.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 342–43 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 51–2 (1978), U.S.Code Cong. & Admin. News, pp. 5837, 6299. Furthermore, 11 U.S.C. § 523(a)(7) provides that "A discharge ... does not discharge an individual debtor from any debt ... to the extent such debt is for fine, penalty, or forfeiture payable to and for the benefit of a governmental unit...." Section 523(a)(7) has been interpreted as applying to punitive contempt sanctions and, accordingly, such contempt obligations have been determined to be non-dischargeable in bankruptcy. *See, e.g., In re Gedeon,* 31 B.R. 942 (Bankr.Col.1983). As this court noted in *In re Milone,* "[i]t has been crystal clear at least since the leading case of *In re Moore,* 111 F. 145, 148–149 (W.D.Ky.1901), that a true criminal proceeding in the 'pro bono publico' sense is not affected by [a] bankruptcy proceeding involving [a] criminal defendant." 73 B.R. at 455.

In the last analysis, comity considerations between the federal and state courts in my judgment require that the bankruptcy court not interfere with the exercise of the jurisdiction of the state court in a true criminal proceeding. This court has found that the proceeding in question is a true criminal proceeding and not an indirect effort to force a repayment of a dischargeable debt. If the record indicated that the sole basis for the state court's action was the mere filing of a bankruptcy petition, then of course this court would issue an injunction.

In that regard, I believe that the state court will be aware that there are considerations akin to comity towards this court as well, in that an individual has every right to file a bankruptcy petition. Any circumstances regarding criminal contempt for that action must take into account an individual's legal right to file bankruptcy. The bankruptcy petition is a fact, but it cannot be a ground, by itself, for a charge of criminal contempt. *Cf.* 11 U.S.C. § 525 (governmental units shall not discriminate against a person solely because such person has been a debtor); *Perez v. Campbell,*

402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971) (state law may not have the effect of frustrating the discharge granted to a debtor). I have no reason to believe that the state court will not apply the law in accordance with the *totality* of the facts involved in that sense.

### *Conclusion*

Inasmuch as this court has found, based upon the pleadings and the evidence presented at the trial, that the state court proceeding is a legitimate criminal contempt proceeding initiated to protect the state court's authority and to vindicate its dignity, the plaintiff's Complaint seeking a permanent injunction is denied. A separate Final Judgment will be entered in accordance with this Opinion.

DONE and ORDERED.