Plymouth Family Division
No. 2000-288

DEBORA-MARIE ROGOWICZ

v.

WILLIAM J. O'CONNELL

December 10, 2001

*Philip T. McLaughlin*, attorney general (*Ann M. Rice*, senior assistant attorney general, on the brief and orally), for the plaintiff.

*Risa Evans*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

BRODERICK, J. The defendant, William J. O'Connell, appeals his conviction for indirect criminal contempt. We reverse and remand.

The record supports the following facts. Debora-Marie Rogowicz and the defendant had a romantic relationship for several years. In September

1999, Rogowicz filed a domestic violence petition against him. The family division issued a protective order in early October, which mandated that the defendant not contact, stalk, harass, intimidate or otherwise interfere with Rogowicz's person or liberty.

Approximately one month after the protective order was issued, Rogowicz filed a request for an emergency hearing, alleging that the defendant had violated the order on numerous occasions. The Family Division (*Carbon*, J.), treated Rogowicz's request as a motion for criminal contempt, notified the defendant of the allegations and his attendant rights and referred the matter to the county prosecutor. The county prosecutor apparently misconstrued the case as being "civil in nature," and declined to pursue it.

In late November 1999, Attorney Susannah Colt, the director of New Hampshire's Legal Assistance Domestic Violence Project, filed an appearance in the contempt case on behalf of Rogowicz. Colt's essential role, however, was to prosecute the defendant for criminal contempt. The record is not clear on how Colt assumed the role of prosecutor, but a pleading she filed alleges that the family division requested her appearance.

The defendant filed a motion to "preclude" Colt from prosecuting the case, asserting that she had an interest in gaining a criminal conviction because it would benefit the domestic violence project and perhaps assist in securing future funding. He also argued that Colt's client in the matter was Rogowicz; thus, Colt was serving two masters — Rogowicz and the State. The defendant contended that this arrangement could result in a conflict between Colt's ethical obligations to her client and her prosecutorial duties. The defendant was particularly concerned that Colt's prosecutorial obligation to comply with discovery requests would conflict with her duty to protect material covered by the attorney-client privilege.

The Family Division (*Kelly*, J.) denied the motion to disqualify Colt, rejecting the defendant's argument that Colt had an interest in gaining a conviction to benefit the project as "thoroughly unconvincing and without support." The family division did not, however, address the defendant's contention that Colt's representation of Rogowicz conflicted with her prosecutorial duties. The defendant was convicted of indirect criminal contempt. This appeal followed.

The issue presented by this appeal is whether the trial court committed reversible error by allowing counsel for a party who benefited from a court order to prosecute indirect criminal contempt for alleged violations of the order. This issue is a question of law and, thus, we apply a *de novo* standard of review. *See State v. Paulsen*, 143 N.H. 447, 449 (1999).

██ Contempt is "a specific and substantive [common law] offense that is separate and distinct from the matter in litigation out of which the contempt arose." *Town of Nottingham v. Cedar Waters, Inc.*, 118 N.H. 282, 285 (1978) (quotation omitted). The two classes of contempt — civil and criminal — are distinguished by the character and purpose of the possible punishment. While civil contempt is remedial and aims to coerce compliance with a court order for the benefit of the complainant, criminal contempt seeks to vindicate the dignity of the court by punishing the contemnor with a determinate sentence. *See id.* Criminal contempt proceedings arising out of civil litigation are between the public and the defendant. *See id.*

██ Generally, a proceeding for criminal contempt must satisfy the procedural requirements of a criminal proceeding. *State v. Lieber*, 146 N.H. 105, 107 (2001). The common law of this State, however, has not precluded the institution and prosecution of certain criminal complaints by private citizens within established limitations. *See State (Haas Complainant) v. Rollins*, 129 N.H. 684, 685 (1987). This common law principle, we believe, extends to the initiation and prosecution of a criminal contempt proceeding by a private attorney.

██ Indeed, in *Young v. U.S. ex rel. Vuitton et Fils S. A.*, 481 U.S. 787, 793 (1987), the United States Supreme Court concluded that it is well-established that courts "possess inherent authority to initiate contempt proceedings for disobedience to their orders, authority which necessarily encompasses the ability to appoint a private attorney to prosecute the contempt." Because the purpose of criminal contempt is to vindicate the authority of the court, it is essential that the court have some mechanism of self-protection to ensure criminal contempt does not go unpunished. "Courts cannot be at the mercy of another Branch [of government] in deciding whether such proceedings should be initiated." *Id.* at 796. In sum, the fundamental purpose of criminal contempt proceedings is to preserve respect for the judicial system and its orders. "As a result, courts have long had, and must continue to have, the authority to appoint private attorneys to initiate such proceedings when the need arises." *Id.* at 800-01.

██ The authority to appoint a private prosecutor, however, should be exercised with restraint in accord with the notion that "only the least possible power adequate to the end proposed should be used in contempt cases." *Id.* at 801 (brackets and quotation omitted). We agree with the Court in *Young* that criminal contempt should, in the first instance, be referred to the executive branch for prosecution. *See id.* We are confident

that in most cases the executive branch will act to preserve respect for judicial authority. In the unusual case in which a court believes that prosecution is necessary, even after the executive branch has declined to act, a court may appoint a private prosecutor.

■ In the exercise of its supervisory authority, the Court in *Young* also held that "counsel for a party that is the beneficiary of a court order may not be appointed as prosecutor in a [criminal] contempt action alleging a violation of that order." *Id.* at 809. We regard this holding in *Young* as persuasive and adopt it. It is the prosecutor's duty to "remain under appropriate restraint and to avoid violent partisanship, partiality, and misconduct which may tend to deprive the defendant of the fair trial to which he or she is entitled." 63C AM. JUR. 2D *Prosecuting Attorneys* § 23 (1997). The "prosecutor's duty is to seek justice, not merely to convict." *State v. Bujnowski*, 130 N.H. 1, 5 (1987) (quotation omitted). Therefore, the prosecutor has a duty to the public to achieve justice and a duty to the defendant to "never lose sight of the fact that [the] defendant is entitled to a full measure of fairness." 63C AM. JUR. 2D *Prosecuting Attorneys* § 23.

In contrast, a private attorney generally owes a duty of loyalty only to the client and "should pursue a matter on behalf of a client despite opposition, obstruction or personal inconvenience to the lawyer, and may take whatever lawful and ethical measures are required to vindicate [the] client's cause or endeavor." N.H. R. PROF. CONDUCT 1.3, ABA Model Code comments. All attorneys must avoid conflicts of interest and are bound to avoid even the appearance of impropriety. *See* N.H. R. PROF. CONDUCT 1.7; *Wehringer's Case*, 130 N.H. 707, 719 (1988).

■ Private attorneys appointed to prosecute criminal contempt represent the State and are duty bound to advance the public interest in vindicating the court's authority. *See Young*, 481 U.S. at 804. Accordingly, "[a] private attorney appointed to prosecute [alleged] criminal contempt ... should be as disinterested as a public prosecutor who undertakes [any criminal] prosecution." *Id.* This ensures that the private prosecutor can effectively seek justice on behalf of the State, while vigilantly protecting a defendant's right to a fair trial. To preserve the integrity of such a prosecution, we do not concern ourselves only with actual impropriety or prejudice, but also with "the *potential* for [any] private interest to influence the discharge of public duty." *Id.* at 805.

When a private prosecutor represents a party involved in the prosecution, the prosecutor's public duty to pursue justice may be compromised by the duty to zealously represent the interests of his client.

*See id.* at 804; N.H. R. PROF. CONDUCT 1.3. The appearance of impropriety and the potential for conflicts of interest are inherent in such a situation. We reject the reasoning in *Wilson v. Wilson*, 984 S.W.2d 898 (Tenn. 1999), *cert. denied*, 528 U.S. 822 (1999), which the trial court relied upon in denying the defendant's motion to disqualify Colt. In *Wilson*, the Tennessee court disagreed with *Young*, concluding that no potential for conflict or the appearance of impropriety is present when a private attorney who represents the beneficiary of a court order prosecutes a contempt action arising from that order. We simply cannot reconcile the arguments advanced in *Wilson* with our analysis of the conflicting duties of private attorneys and prosecutors and the ethical obligations of both to avoid even the appearance of impropriety.

In this case, Rogowicz was the beneficiary of the protective order allegedly violated by the defendant. Colt appeared on behalf of Rogowicz, and clearly represented her interests, while prosecuting the defendant for criminal contempt based upon a violation of the protective order. Further, the potential for the private interests of Rogowicz to influence the discharge of Colt's prosecutorial duties was readily apparent. Accordingly, Colt should have been disqualified.

*Reversed and remanded.*

BROCK, C.J., and NADEAU and DALIANIS, JJ., concurred.